## WINONA & ST. PETER RAILROAD COMPANY v. CITY OF MARSHALL. CHICAGO & NORTH WESTERN RAILWAY COMPANY, APPELLANT.[1]

February 10, 1922.

No. 22,480.

**Railway—no gross earnings tax paid—no exemption from other taxation.**
Appellant was incorporated under the provisions of chapter 19, Special Laws of 1862. Chapter 50 of Special Laws of 1875 provides that, upon the payment by appellant of a specified tax upon the gross earnings of its railroad in lieu of all other taxes and assessments, its property of every nature shall be forever exempt from other forms' of taxation. *Held* that, when such railroad company sells its line of road and no longer receives earnings therefrom and ceases to pay any tax, it breaches its contract and can no longer be heard to claim the lands and property which it still retains as exempt from taxation.

Winona & St. Peter Railroad Company filed objections to a paving assessment against two of its lots by the city of Marshall. The objections were heard by the city council and the assessment confirmed. The matter was submitted upon stipulated facts to Olsen, J., who made findings and confirmed the assessment. From the judgment entered pursuant to the order for judgment, the railroad company appealed. Affirmed.

*Brown, Somsen & Sawyer,* for appellant.
*James H. Hall,* for respondent.

QUINN, J.

Appellant at the times herein material was and is a railroad company created by chapter 19, p. 243, Special Laws of Minnesota for the year 1862. Thereunder it succeeded to all the rights of its pre-

[1]Reported in 186 N. W. 791.

decessor, Transit Railroad Company. Laws 1857 (Ex. Sess.) p. 17, c. 1, subc. 2, § 4. It is the identical corporation referred to in chapter 50, p. 277, Special Laws of 1875. From the time of its organization it has been and now is the owner and in possession of lots 6 and 7 of block 11, in the city of Marshall, upon which there is a substantial brick building, a portion of which has been occupied by appellant during said time for office purposes and the other parts have been rented for mercantile purposes. Respondent is a municipal corporation, city of the fourth class, and subject to the provisions of chapter 65, p. 62, Laws of 1919.

From the time of its organization until June 7, 1900, appellant owned and operated a line of railroad extending through the state of Minnesota, and annually paid into the treasury the percentage of its gross earnings required under its charter. On the last named date it sold and conveyed its line of road to the Chicago & North Western Railway Company, which has ever since owned and operated the same and paid into the treasury the percentage of its gross earnings required by law, since which time appellant has neither owned, operated nor received any earnings from any railway company, nor paid any gross earnings tax into the treasury of the state of Minnesota. In 1920 respondent, through its qualified officers undertook to levy a special assessment against the lots mentioned to defray the expenses of paving the portions of Second and Main streets abutting thereon. Objections were made and filed and a hearing had before the city council where the assessment was confirmed. An appeal was taken to the district court where a trial was had and an order made and filed affirming the assessment, upon which judgment was entered. From the judgment so entered this appeal was taken.

The act of 1857, supra, provides that the gross earnings tax shall be in lieu of all taxes whatsoever. Under the decision in State v. Luther, 56 Minn. 156, 57 N. W. 464, the validity of this act is established. Under that holding it is clear that the contract under consideration was a binding obligation between the contracting parties until revoked or annulled. Stearns v. State, 179 U. S. 223, 21 Sup. Ct. 73, 45 L. ed. 162.

It follows that where the legislature grants a franchise to a railway company and stipulates that its property and lands shall be forever free from taxation in consideration of the payment of a specified tax upon its gross earnings, the same becomes a valid contract subject to the right of the legislature to repeal or amend the same, but where, as in the instant case, the railway company sells and disposes of its line of road and ceases to receive any such earnings and to pay any gross earnings tax, quite a different proposition arises. While appellant succeeded to all the rights of its predecessor under its charter and was thereby, as well as by the provisions of chapter 50 of the Special Laws of 1875 [p. 277] permitted to pay a specified tax upon the gross earnings of its line of road in lieu of all other taxes and assessments, yet, where it disposes of its road and thereby voluntarily places itself in a position where it receives no such earnings and pays no gross earnings tax, it thereby breaches the terms of its contract and cannot thereafter be heard to claim immunity from taxation upon lands which it still retains. To hold otherwise would permit a clear violation of the letter and spirit of appellant's charter.

The promise on the part of appellant to operate its line of road and to transport by regular trains all passengers and freight delivered to it by connecting lines on the same terms and at no greater rates than for the same service to persons living on the line of said road, formed a part of the consideration for the sale and transfer of the rights, benefits, privileges, property, franchises and interest of the Transit Railroad Company to appellant under the provisions of chapter 19 supra; the lands granted another part, and the privilege of paying a stated per cent of its gross earnings in lieu of all other forms of taxation, still another. The elements which make up the last mentioned part of the consideration are so related that, when appellant disposed of its line of road and thereby ceased to receive earnings or to pay any gross earnings tax into the state treasury, the very things which it agreed to do as part of the consideration failed, and with it must necessarily fall the provision exempting from taxation the property which it still retains. Appellant has paid no tax whatever upon its property since the sale of its line of road in June,

1900, which of itself abrogates the exemption clause in the contract. The exemption proviso, so far as time is concerned, runs co-ordinate with the payment of the gross earnings tax therein referred to, and as provided for in chapter 50 supra. Any other construction would, it seems, permit appellant to receive the lands granted to it, dispose of the road and cease to further pay any gross earnings tax, then sit back and claim all of its lands and property which it then holds as exempt from taxation. Such was not the legislative intent in passing the acts referred to.

Affirmed.